Brian S. King, #4610
Brent J. Newton, #6950
Samuel M. Hall, #16066
**BRIAN S. KING, P.C.**
420 East South Temple, Suite 420
Salt Lake City, UT 84111
Telephone: (801) 532-1739
Facsimile: (801) 532-1936
brian@briansking.com
brent@briansking.com
samuel@briansking.com

Attorneys for Plaintiffs

THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| MARK E. and C.E.,<br><br>           Plaintiffs,<br><br>vs.<br><br>ANTHEM BLUE CROSS and BLUE SHIELD, and the MAXIMUS EMPLOYEES WELFARE BENEFIT PLAN,<br><br>           Defendants. | COMPLAINT |

Plaintiffs Mark E. ("Mark") and C.E., through their undersigned counsel, complain and allege against Defendants Anthem Blue Cross and Blue Shield ("Anthem") and the Maximus Employees Welfare Benefit Plan ("the Plan") as follows:

**PARTIES, JURISDICTION AND VENUE**

1. Mark and C.E. are natural persons residing in Fairfax County, Virginia. Mark is C.E.'s father.

2. Anthem is the trade name of Anthem Health Plans of Virginia and is an independent licensee of the nationwide Blue Cross and Blue Shield network of providers. Anthem was

1

the third-party claims administrator, as well as the fiduciary under ERISA for the Plan during the treatment at issue in this case.

3. The Plan is a self-funded employee welfare benefits plan under 29 U.S.C. §1001 *et. seq.*, the Employee Retirement Income Security Act of 1974 ("ERISA"). Mark was a participant in the Plan, and C.E. was a beneficiary of the Plan at all relevant times.

4. C.E. received medical care and treatment at Solacium Fulshear ("Fulshear") beginning on March 20, 2023. Fulshear is a Texas based residential facility, which provides sub-acute inpatient treatment to adolescents with mental health, behavioral, and/or substance abuse problems.

5. Anthem denied claims for payment of C.E.'s medical expenses in connection with her treatment at Fulshear.

6. This Court has jurisdiction over this case under 29 U.S.C. §1132(e)(1) and 28 U.S.C. §1331.

7. Venue is appropriate under 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391(c) based on ERISA's nationwide service of process and venue provisions, and because Anthem does business in Utah through its network of affiliates.

8. In addition, the Plaintiffs have been informed and reasonably believe that litigating the case outside of Utah will likely lead to substantially increased litigation costs they will be responsible to pay and that would not be incurred if venue of the case remains in Utah. Finally, given the sensitive nature of the medical treatment at issue, it is the Plaintiffs' desire that the case be resolved in the State of Utah where it is more likely their privacy will be preserved.

9. The remedies the Plaintiffs seek under the terms of ERISA and under the Plan are for the benefits due under the terms of the Plan, and pursuant to 29 U.S.C. §1132(a)(1)(B), for appropriate equitable relief under 29 U.S.C. §1132(a)(3) based on the Defendants' violation of the Mental Health Parity and Addiction Equity Act of 2008 ("MHPAEA"), an award of prejudgment interest, and an award of attorney fees and costs pursuant to 29 U.S.C. §1132(g).

## BACKGROUND FACTS

### Fulshear

10. C.E. was admitted to Fulshear on March 20, 2023, due to ongoing struggles with depression, anxiety, suicidality (including two attempts), intrusive thoughts, disordered eating, and self-harm which had not been able to be adequately resolved at other levels of care. C.E.'s treatment at Fulshear was briefly interrupted in July of 2023 when she required acute inpatient hospitalization for short term stabilization, she then returned to Fulshear. On admission to Fulshear her diagnoses included:

    F60.3 – Personality Disorder
    F43.10 – Trauma and Stressor Related Disorder
    F34.1 – Depressive Disorder
    F50.2 – Feeding and Eating Disorder
    F90.2 – Neurodevelopmental Disorder

11. In a letter, dated March 24, 2023, Anthem denied payment for C.E.'s treatment. The letter was attributed to an "experienced healthcare professional" and stated in pertinent part:

    > The request tells us you went to a residential treatment center for your mental health condition. The program asked to extend your stay. The plan clinical criteria considers [sic] ongoing residential treatment medically necessary for those who are a danger to themselves or others (as shown by hearing voices telling them to harm themselves or others or persistent thoughts of harm that cannot be managed at a lower level of care). This service can also be medically necessary for those who have a mental health condition that is causing serious problems with functioning. (For example, being impulsive or abusive, very poor self care, not

3

sleeping or eating, avoidance of personal interactions, or unable to perform usual obligations). In addition, the person must be willing to stay and participate, and is expected to either improve with this care, or to keep from getting worse. The information we have does not show you are a danger to yourself or others, or that you are having serious problems functioning. For this reason, the request is denied as not medically necessary. There may be other treatment options to help you, such as outpatient services. You may want to discuss these with your doctor. It may help your doctor to know we reviewed the request using the MCG guideline Residential Behavioral Health Level of Care, Adult (ORG: B-901-RES).

12. On September 15, 2023, Mark submitted an appeal of the denial of payment for C.E.'s treatment at Fulshear. Mark reminded Anthem that he was entitled to certain protections under ERISA during the appeals process, including a full, fair, and thorough review of the denial conducted by appropriately qualified reviewers which took into account all of the information he provided, and which gave him the specific reasons for the adverse determination, referenced the specific plan provisions on which the determination was based, and which gave him the information necessary to perfect the claim.

13. Mark expressed concern that Anthem had failed to identify its reviewers as ERISA obligated it to do. He asked that the next reviewer have experience treating individuals with C.E.'s diagnoses and that they be trained in the details of MHPAEA to address his allegations concerning a violation of the statute.

14. He noted that Anthem had simply stated that C.E.'s treatment was not medically necessary without citing to any clinical evidence to support this assertion. He asked the next reviewer to make specific references to the materials they relied upon and asked for any other relevant documentation including internal case notes.

15. He wrote that Anthem had only listed March 20, 2023, as the date it had reviewed. He asked that Anthem ensure it reviewed all of C.E.'s dates of service and reminded it that it had an obligation to act in his best interest.

16. He voiced his concern that Anthem's denial was a violation of MHPAEA. He wrote that MHPAEA compelled insurers to ensure coverage for behavioral health services was offered at parity with coverage for analogous medical or surgical care.

17. He identified skilled nursing, subacute rehabilitation, and inpatient hospice care as some of the medical or surgical analogues to the treatment C.E. received.

18. Mark argued that Anthem appeared to be violating MHPAEA by requiring C.E. to exhibit acute level symptoms such as a risk of harm to self or others to qualify for subacute residential care, while not similarly restricting analogous medical or surgical facilities in this manner.

19. He requested that Anthem perform a parity compliance analysis on the Plan to ensure that the Plan was being administered in accordance with MHPAEA and asked to be provided with physical copies of the results of this analysis.

20. In addition Mark asked to be provided with a copy of all documents under which the Plan was operated, including all governing plan documents, the summary plan description, any insurance policies in place for the benefits he was seeking, any administrative service agreements that existed, any clinical guidelines or medical necessity criteria utilized in the determination (along with their medical or surgical equivalents, whether or not these were used), together with any reports or opinions regarding the claim from any physician or other professional, along with their names, qualifications, and denial rates (collectively the "Plan Documents").

21. In a letter dated October 24, 2023, Anthem again denied payment for C.E.'s treatment. The letter stated that the denial was for dates of service between July 19, 2023, and October 20, 2023, and stated in pertinent part:

> The request tells us that you went to residential treatment for a personality disorder. This care is not considered medically necessary unless the clinical criteria are met. The criteria we are using for this review is an MCG guideline called Residential Behavioral Health Level of Care, Adult (ORG: B-901-RES). In order to complete the review, we need to know about your condition. We need information from your doctor to confirm your diagnosis. We need the results of your psychiatric exam and any tests you had that led to the need for treatment. We need to know how your doctor plans to treat you, including what medications are being used. We did not receive this information, so we could not tell whether the care is medically necessary. That is why we have denied your request.

22. In addition, in a letter dated November 2, 2023, Anthem upheld the denial of payment for C.E.'s treatment. This letter addressed dates of service between June 25, 2023, through June 30, 2023, as well as July 2, 2023, and July 8, 2023. It gave the following justification for the denial:

> We reviewed all the information that was given to us before with the first request for coverage. We also reviewed all that was given to us for the appeal. Your doctor wanted you to have residential treatment center care. The reason we were given for this was that you were at risk for serious harm without 24 hour care. We understand that you would like us to change our first decision. Now we have new information from the medical record. We still do not think this was medically necessary for you. We believe our first decision is correct for the following reason: you were not at risk for serious harm that you needed 24 hour care. You could have been treated with outpatient services. We based this decision on the MCG guideline Residential Behavioral Health Level of Care, Adult (ORG: B-901- RES).
>
> The definition of medically necessary is described in the Definitions section on pages 93-94 of your Maximus, Inc. Non-SCA HSA Medical Benefit Booklet effective January 1, 2023.
>
> Your father also mentions in his letter the criteria cited in the denial is not in compliance with the Mental Health Parity and Addiction Equity Act of 2008 (MHPAEA). From our understanding, the health plan's determination is not a violation of the Parity Act. We do treat residential treatment centers the same as all intermediate levels of care and we are not holding your residential treatment to a stricter standard. Intermediate care treatment locations have the goal to move the member to treatment on an outpatient basis. Residential treatment is not meant for long term care.

> You asked us for information about our Mental Health Parity policy and NQTLs (Non Quantitative Treatment Limitations). The details you requested are enclosed.
>
> Lastly, Mark [E.] has made a request for copies of all documents under which the plan is operated, the certificate of coverage, criteria and guidelines used for the benefits you are seeking. This is not including the documents sent in by Mark [E.]. We have included a copy of your Subscriber Certificate.

23. Also, in a letter dated November 6, 2023, Anthem again denied payment for C.E.'s treatment. This letter stated that it denied 83 days starting from August 2, 2023. The letter recycled the same denial rationale as the March 24, 2023, denial letter.

24. On December 7, 2023, Mark asked for the denial of treatment to be evaluated by an external review agency. Mark included the information from his level one appeal and asked the reviewer to fully and carefully review the 1,560 pages from that document and to take into account all of the information he provided.

25. He expressed his concern that Anthem continued to make no reference to any of the clinical evidence he had included in the appeal process. He asked the external reviewer to directly reference the clinical evidence used to inform their decision.

26. He argued that C.E.'s treatment remained medically necessary and that Fulshear was the only facility which could safely and appropriately treat C.E.'s conditions. He wrote that C.E. was admitted to Fulshear on the advice of her treatment team and that they specifically recommended that she not receive outpatient care due to safety concerns. He again requested a copy of the Plan Documents.

27. Mark included a letter of medical necessity dated September 14, 2023, from Dana Van Renterghem, LMSW with the appeal. This letter stated that C.E.'s self-harming and suicidal ideation had resulted in nine occasions where she was given a suicide screen and

placed on extra precautions to ensure her safety. The letter concluded with the following recommendation:

> It is highly recommended that [C.E.] continue in the residential treatment environment with consistent support and care. Lower level care in the past failed to alleviate her symptoms and removal to another version of low level care would create a high risk of regression, including the return of self- harm and suicidal ideation without the safety of the residential environment. She will continue to explore her trauma-related symptoms, including the use of EMDR, while in the consistent therapeutic milieu, in order to improve her levels of anxiety, depression, lack of sense of self, self-harm, lack of congruence of emotions and to explore the healing of family relationships.

28. Mark has not received a response to this request as of the date of the filing of this lawsuit. Mark's summary plan description states that any action must be brought within 90 days of Anthem's final determination. This provision explicitly contradicts the language of the denial letters themselves which (when any limitation of action is indicated) provide for a one year limitation, unless the plan allows for a longer period. No mention is made in those letters for a limitation of action less than one quarter of that length. Plaintiffs have filed this action using the 90-day timeframe out of an abundance of caution.

29. The Plaintiffs exhausted their pre-litigation appeal obligations under the terms of the Plan and ERISA.

30. The denial of benefits for C.E.'s treatment was a breach of contract and caused Mark to incur medical expenses that should have been paid by the Plan in an amount totaling over $250,000.

## FIRST CAUSE OF ACTION

### (Claim for Recovery of Benefits Under 29 U.S.C. §1132(a)(1)(B))

31. ERISA imposes higher-than-marketplace quality standards on insurers and plan administrators. It sets forth a special standard of care upon plan fiduciaries such as

Anthem, acting as agent of the Plan, to discharge its duties in respect to claims processing solely in the interests of the participants and beneficiaries of the Plan. 29 U.S.C. §1104(a)(1).

32. Anthem and the Plan failed to provide coverage for C.E.'s treatment in violation of the express terms of the Plan, which promise benefits to employees and their dependents for medically necessary treatment of mental health and substance use disorders.

33. ERISA also underscores the particular importance of accurate claims processing and evaluation by requiring that administrators provide a "full and fair review" of claim denials and to engage in a meaningful dialogue with the Plaintiffs in the pre-litigation appeal process. 29 U.S.C. §1133(2).

34. The denial letters produced by Anthem do little to elucidate whether Anthem conducted a meaningful analysis of the Plaintiffs' appeals or whether it provided them with the "full and fair review" to which they are entitled. Anthem failed to substantively respond to the issues presented in Mark's appeals and did not meaningfully address the arguments or concerns that the Plaintiffs raised during the appeals process.

35. In addition, none of the denial letters appear to include the full and correct dates of service, calling into question the thoroughness of Anthem's review.

36. Anthem and the agents of the Plan breached their fiduciary duties to C.E. when they failed to comply with their obligations under 29 U.S.C. §1104 and 29 U.S.C. §1133 to act solely in C.E.'s interest and for the exclusive purpose of providing benefits to ERISA participants and beneficiaries, to produce copies of relevant documents and information to claimants upon request, and to provide a full and fair review of C.E.'s claims.

//

37. The actions of Anthem and the Plan in failing to provide coverage for C.E.'s medically necessary treatment are a violation of the terms of the Plan and its medical necessity criteria.

38. While the presentation of alternative or potentially inconsistent claims in the manner that Plaintiffs state in their first and second causes of action is specifically anticipated and allowed under F.R.Civ.P. 8, Plaintiffs contend they are entitled to relief and appropriate remedies under both causes of action.

## SECOND CAUSE OF ACTION

### (Claim for Violation of MHPAEA Under 29 U.S.C. §1132(a)(3))

39. MHPAEA is incorporated into ERISA and is enforceable by ERISA participants and beneficiaries as a requirement of both ERISA and MHPAEA. The obligation to comply with both ERISA and MHPAEA is part of Anthem's fiduciary duties.

40. MHPAEA requires ERISA plans to provide no less generous coverage for treatment of mental health and substance use disorders than they provide for treatment of medical/surgical disorders.

41. MHPAEA prohibits ERISA plans from imposing treatment limitations on mental health or substance use disorder benefits that are more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits and makes illegal separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits. 29 U.S.C.§1185a(a)(3)(A)(ii).

42. Impermissible nonquantitative treatment limitations under MHPAEA include, but are not limited to, medical management standards limiting or excluding benefits based on medical necessity; refusal to pay for higher-cost treatment until it can be shown that a

lower-cost treatment is not effective; and restrictions based on geographic location, facility type, provider specialty, or other criteria that limit the scope or duration of benefits for mental health or substance use disorder treatment. 29 C.F.R. §2590.712(c)(4)(ii)(A), (F), and (H).

43. The medical necessity criteria used by Anthem for the intermediate level mental health treatment benefits at issue in this case are more stringent or restrictive than the medical necessity criteria the Plan applies to analogous intermediate levels of medical or surgical benefits.

44. Comparable benefits offered by the Plan for medical/surgical treatment analogous to the benefits the Plan excluded for C.E.'s treatment include sub-acute inpatient treatment settings such as skilled nursing facilities, inpatient hospice care, and rehabilitation facilities.

45. When Anthem and the Plan receive claims for intermediate level treatment of medical and surgical conditions, they provide benefits and pay the claims as outlined in the terms of the Plan based on generally accepted standards of medical practice.

46. Anthem and the Plan evaluated C.E.'s mental health claims using medical necessity criteria that deviate from generally accepted standards of medical practice. This process resulted in a disparity because the Plan denied coverage for mental health benefits when the analogous levels of medical or surgical benefits would have been paid.

47. As an example of disparate application of medical necessity criteria between medical/surgical and mental health treatment, Anthem's reviewers improperly utilized acute medical necessity criteria to evaluate the non-acute treatment that C.E. received.

Anthem's improper use of acute inpatient medical necessity criteria is revealed in the statements in Anthem's denial letters such as:

> The plan clinical criteria considers ongoing residential treatment medically necessary for those who are a danger to themselves or others (as shown by hearing voices telling them to harm themselves or others or persistent thoughts of harm that cannot be managed at a lower level of care).

48. If C.E. had been experiencing such severe symptoms as "hearing voices telling them to harm themselves or others or persistent thoughts of harm," she would have been in need of acute hospitalization for her mental health symptoms, not sub-acute residential treatment.

49. This improper use of acute inpatient criteria was a nonquantitative treatment limitation that cannot permissibly be applied to evaluate the sub-acute level of care that C.E. received.

50. The Plan does not require individuals receiving treatment at sub-acute inpatient facilities for medical/surgical conditions to satisfy acute medical necessity criteria to receive Plan benefits.

51. Treatment provided in an acute care environment is necessarily distinct from treatment provided in a non-acute environment. Utilizing acute criteria to evaluate a non-acute claim will result in a near universal denial of benefits, regardless of the medical necessity, clinical appropriateness, or nature of the treatment.

52. The Defendants cannot and will not deny that use of acute care criteria, either on its face or in application, to evaluate sub-acute treatment violates generally accepted standards of medical practice. They must and do acknowledge that they adhere to generally accepted standards of medical practice when they evaluate the medical necessity criteria of both mental health/substance use disorders and medical/surgical

claims.

53. In addition, the level of care applied by Anthem failed to take into consideration the patient's safety if she returned to a home environment, as well as the risk of decline or relapse if less intensive care than what was medically necessary was provided.

54. Generally accepted standards of medical practice for medical and surgical rehabilitation under the Plan take into consideration safety issues and considerations of preventing decline or relapse when admission into an intermediate care facility, such as a skilled nursing or rehabilitation facility, is approved.

55. Anthem also stated in its denial letters when asked to prove its MHPAEA compliance that, "Residential treatment is not meant for long term care." The terms of the insurance contract do not limit the duration of residential treatment care, but Anthem here tacitly acknowledges doing so in practice.

56. The phrase "long term care" is nebulous and undefined, and inasmuch as Anthem limits residential treatment to an undisclosed short term period but does not do so for analogous medical or surgical services, it violates MHPAEA.

57. In this manner, the Defendants violate 29 C.F.R. §2590.712(c)(4)(i) because the terms of the Plan and the medical necessity criteria utilized by the Plan and Anthem, as written or in operation, use processes, strategies, standards, or other factors to limit coverage for mental health or substance use disorder treatment in a way that is inconsistent with, and more stringently applied, than the processes, strategies, standards or other factors used to limit coverage for medical/surgical treatment in the same classification.

58. The violations of MHPAEA by Anthem and the Plan are breaches of fiduciary duty and also give the Plaintiffs the right to obtain appropriate equitable remedies as provided under 29 U.S.C. §1132(a)(3) including, but not limited to:

    (a) A declaration that the actions of the Defendants violate MHPAEA;

    (b) An injunction ordering the Defendants to cease violating MHPAEA and requiring compliance with the statute;

    (c) An order requiring the reformation of the terms of the Plan and the medical necessity criteria utilized by the Defendants to interpret and apply the terms of the Plan to ensure compliance with MHPAEA;

    (d) An order requiring disgorgement of funds obtained by or retained by the Defendants as a result of their violations of MHPAEA;

    (e) An order requiring an accounting by the Defendants of the funds wrongly withheld by each Defendant from participants and beneficiaries of the Plan as a result of the Defendants' violations of MHPAEA;

    (f) An order based on the equitable remedy of surcharge requiring the Defendants to provide payment to the Plaintiffs as make-whole relief for their loss;

    (g) An order equitably estopping the Defendants from denying the Plaintiffs' claims in violation of MHPAEA; and

    (h) An order providing restitution from the Defendants to the Plaintiffs for their loss arising out of the Defendants' violation of MHPAEA.

59. In addition, Plaintiffs are entitled to an award of prejudgment interest pursuant to U.C.A. §15-1-1, and attorney fees and costs pursuant to 29 U.S.C. §1132(g).

//

WHEREFORE, the Plaintiffs seek relief as follows:

1. Judgment in the total amount that is owed for C.E.'s medically necessary treatment at Fulshear under the terms of the Plan, plus pre and post-judgment interest to the date of payment;

2. Appropriate equitable relief under 29 U.S.C. §1132(a)(3) as outlined in Plaintiffs' Second Cause of Action;

3. Attorney fees and costs incurred pursuant to 29 U.S.C. §1132(g); and

4. For such further relief as the Court deems just and proper.

DATED this 30th day of January, 2024.

By    s/ Brian S. King
      Brian S. King
      Attorney for Plaintiffs

County of Plaintiffs' Residence:
Fairfax County, Virginia.